IN RE SUBPOENA DUCES TECUM SERVED UPON ATTORNEY POTTS.

[Cite as *In re Subpoena Duces Tecum Served Upon Atty. Potts,* 100 Ohio St.3d 97, 2003-Ohio-5234.]

(No. 2002–0953—Submitted April 29, 2003—Decided October 15, 2003.)

**MOYER, C.J.**

{¶ 1} Appellant, attorney John F. Potts, appeals from the judgment of the Lucas County Court of Appeals, which affirmed the trial court's order for an in-camera review of subpoenaed documents. For the following reasons, we (1) reverse the judgment of the court of appeals in part and hold that a trial court, in responding to a motion to quash a subpoena duces tecum seeking the production of documents before trial, must first conduct an evidentiary hearing, which may be held in camera, in order that the proponent of the subpoena can demonstrate why the subpoena is not unreasonable or oppressive, and (2) affirm that part of the judgment of the court of appeals regarding the requirement that a trial court make an in-camera inspection of subpoenaed documents before ruling on any issues of privilege.

## I. Facts

{¶ 2} In 1999, attorney John F. Potts was retained to represent Donald Lentz in a civil forfeiture action filed by the state. Soon thereafter, a grand jury indicted Lentz on six counts of money laundering, and the state amended its civil forfeiture action to a criminal forfeiture action. The two cases were consolidated.

{¶ 3} The state served notice on Lentz that it intended to use an "expenditure analysis" to prove its contention that Lentz had received substantial income from illegal sources. In order to acquire the information necessary to compile the expenditures, the state served a subpoena duces tecum on Potts.

{¶ 4} This first subpoena commanded Potts to appear in the prosecuting attorney's office and to bring with him certain described documents relating to legal fees paid to Potts by Lentz for the period January 1, 1999, to December 1, 1999. Potts filed a motion to quash, and the subpoena was withdrawn. A second subpoena was issued commanding Potts to appear at the trial as a witness for the prosecution and to bring with him the same documents described in the first subpoena. When the trial was rescheduled, the state amended the subpoena, expanding the described documents to include those relating to the forfeiture action and the money laundering case (now consolidated) and extending the period covered from January 1, 1999, to August 28, 2000, the date on which trial was then scheduled to begin.

{¶ 5} In his motions to quash, filed on his own and on his client's behalf, Potts argued that (1) the state failed to establish either the relevance of the documents or their unavailability, (2) the state had not demonstrated the necessity of an in-camera review, and (3) the documents were privileged.

{¶ 6} Applying Crim.R. 17(C), the trial court ordered attorney Potts to submit for an in-camera review only those requested documents that related to fee agreements, amounts, dates paid, and forms of payment. When Potts appeared on the date set but without the documents, the court found him guilty of criminal contempt, fined him $250, and ordered him to serve ten days in the county jail. The sentence was stayed pending appeal.

{¶ 7} Upon Potts's appeal, the court of appeals affirmed the judgment ordering an in-camera inspection but reversed the judgment of criminal contempt on the basis that the trial court's rejection of Potts's privilege arguments was prematture. The cause was remanded to the trial court to proceed with an in-camera review.

{¶ 8} The cause is now before this court upon the allowance of a discretionary appeal.

{¶ 9} There are two issues presented for our review: (1) what test should be used by trial courts in an evidentiary hearing to determine whether a subpoena

duces tecum should be quashed as unreasonable or oppressive pursuant to Crim.R. 17(C), and (2) whether a trial court should rule on privilege claims before it conducts an in-camera inspection of the subpoenaed information.

## II.  Motion to Quash the Subpoena Duces Tecum

{¶ 10} In urging us to reverse the judgment of the court of appeals, Potts argues that we should adopt the United States Supreme Court's test for determining when a motion to quash should be granted.

{¶ 11} Fed.R.Crim.P. 17(c) governs the issuance of subpoenas duces tecum in federal criminal proceedings.  Subsection 17(c)(2) states that, on motion, "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."  Ohio Crim.R. 17(C) is substantively indistinguishable from Fed. R.Crim.P. 17(c).

{¶ 12} The Supreme Court has stated that "Rule 17(c) was not intended to provide an additional means of discovery" and that "[i]ts chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States* (1951), 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879.  In *United States v. Nixon* (1974), 418 U.S. 683, 699–700, 94 S.Ct. 3090, 41 L.Ed.2d 1039, the Supreme Court adopted a four-step test to determine, during an evidentiary hearing, whether a subpoena duces tecum is unreasonable or oppressive.  The court stated that "in order to require production prior to trial, the moving party must show:  (1) that the documents are evidentiary and relevant;  (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;  (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial;  and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' "  (Footnote omitted.)

{¶ 13} The test has been applied by Ohio courts when deciding whether a subpoena duces tecum is unreasonable or oppressive.  See *State v. Geis* (1981), 2 Ohio App.3d 258, 2 OBR 286, 441 N.E.2d 803.  However, we have not adopted a test to determine whether a subpoena duces tecum issued in accordance with Crim.R. 17(C) should be suppressed.  We hereby adopt the four-step test announced in *Nixon*.

{¶ 14} Pursuant to *Nixon*, the trial court is required to conduct an evidentiary hearing, at which the party filing the subpoena duces tecum must convince the court that the information sought in the subpoena meets the *Nixon* test.  The court's determination of whether a subpoena is unreasonable or oppressive is separate from its decision to conduct an in-camera inspection of documents that the trial court ultimately orders to be filed.

{¶ 15} We agree with the conclusion of the court of appeals that the trial court applied the *Nixon* test when it decided Potts's motion to quash. However, the record is clear that although the *Nixon* test was conducted by the trial court, it did not occur during a separate evidentiary hearing.

{¶ 16} Pursuant to Crim.R. 17(C), when deciding a motion to quash a subpoena duces tecum requesting the production of documents prior to trial, a trial court shall hold an evidentiary hearing. At the hearing, which may be held in camera, the proponent of the subpoena must demonstrate that the subpoena is not unreasonable or oppressive by showing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' " *Nixon*, 418 U.S. at 699–700, 94 S.Ct. 3090, 41 L.Ed.2d 1039.

{¶ 17} Since the trial court did not hold an evidentiary hearing to address the *Nixon* test, we reverse the judgment of the court of appeals and remand the cause to the trial court to hold an evidentiary hearing and apply the appropriate standard to the motion to quash.

### III. In–Camera Inspection

{¶ 18} If the trial court determines that the subpoenaed documents meet the *Nixon* test and a party claims that the documents are privileged, the trial court shall conduct an in-camera inspection of the documents in question before ruling on any claims of privilege.

{¶ 19} The trial court here ordered the production of the documents sought by the state and, without an in-camera inspection, determined that the documents were not privileged. The court of appeals held that an in-camera inspection of the documents is the appropriate means to determine whether some or all of the documents are privileged.

{¶ 20} Attorney Potts argued that under both the attorney-client privilege and work-product privilege, the information subpoenaed by the state regarding his client should be protected. He contends that the state's request was overly broad because the state's final subpoena was expanded to include billing records beyond the time coincident with the offenses charged in the indictment. Therefore, Potts concludes that at least a portion of the documents could be privileged and that such a determination can only be made definitively through an in-camera inspection.

{¶ 21} Appellant also asserts that a court considering a motion to quash a subpoena issued to a criminal defense attorney in a pending case must consider,

in addition to the four factors established in *Nixon,* the impact of the subpoena on the defendant's constitutional right pursuant to the Sixth Amendment to the United States Constitution to be represented by an attorney of his choice.

{¶ 22} The court of appeals held that assertions of privilege raise an issue best considered only *after* a trial court determines that each of the four criteria of the *Nixon* analysis have been met. We agree with the court of appeals when it concluded that "the trial court's rejection of [Potts's] privilege arguments was premature and, perhaps, ill advised." When a claim of privilege is raised, an in-camera inspection must occur in order that the trial court can determine the specific issue based upon its actual review of the records claimed to be privileged.

{¶ 23} In the case at bar, the trial court did not afford the parties a hearing at which they could present evidence in support of and in opposition to the proposition that the four prongs of the *Nixon* test were satisfied. Nor did it conduct an in-camera review for purposes of resolving Potts's claims of privilege. We therefore remand this cause to the trial court for further proceedings in accordance with this opinion.

Judgment accordingly.

FORD, F.E. SWEENEY, PETREE, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

PFEIFER, J., concurs separately.

DONALD R. FORD, J., of the Eleventh Appellate District, sitting for RESNICK, J.

CHARLES R. PETREE, J., of the Tenth Appellate District, sitting for COOK, J.

---

**PFEIFER, J., concurring.**

{¶ 24} I concur in the syllabus, judgment, and opinion of the majority. I write separately to highlight an interesting argument made by the appellant, which was not necessary for the majority to address.

{¶ 25} Appellant, attorney John F. Potts, argues that a subpoena issued by the prosecution in a pending criminal case to an attorney representing a criminal defendant in the same case implicates the defendant's constitutional right to be represented by an attorney of his choice. This argument has some merit, especially when you consider that the prosecution sent a letter to appellant's attorney, which stated "that if the subpoena isn't quashed, your client [Mr. Potts] must withdraw from representing Mr. Lentz in the trial of the criminal indict-ment." I am concerned about the chilling effect subpoenas and letters like those in this case could have on a defendant's constitutional right to counsel.

Cooper & Walinski, Meredith L. Mercurio and John Czarnecki, for appellant.

Julia R. Bates, Lucas County Prosecuting Attorney, and Thomas A. Matuszak, Assistant Prosecuting Attorney, for appellee.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Elizabeth Luper Schuster and John W. Barron, Assistant State Solicitors, urging affirmance for amicus curiae Attorney General of Ohio.

Kevin Baxter, Erie County Prosecuting Attorney, and Mary Ann Barylski, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.