[Cite as *State v. Findler*, 2021-Ohio-449.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190606 |
| | | TRIAL NO.    19TRD-34133 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| JOSEPH P. FINDLER | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 19, 2021

*Andrew Garth,* City Solicitor, *William T. Horsely*, Chief Prosecuting Attorney, and *Ashton L. Tucker,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Joseph P. Findler,* pro se.

**CROUSE, Judge.**

{¶1} Defendant-appellant Joseph P. Findler was convicted of speeding in violation of Cincinnati Municipal Code 506-8. He has appealed, arguing in four assignments of error that the trial court erred (1) by not conducting an evidentiary hearing on the state's motion to quash his subpoena, (2) by granting the motion to quash, (3) by making and admitting hearsay statements, and (4) by improperly restricting the scope of cross-examination and demonstrating bias against him and in favor of the state.

{¶2} We overrule all assignments of error and affirm the judgment of the trial court.

### *Factual Background*

{¶3} Cincinnati Police Officer Bryan Dettmer testified that on September 13, 2019, he recorded Findler driving 76 m.p.h. in a 55-m.p.h. zone on Interstate 75 in Cincinnati, Ohio. He initiated a traffic stop and cited Findler for speeding.

{¶4} Prior to trial, Findler filed a subpoena requesting that Dettmer "produce any mobile phone or tablet with content relating to Findler viewed, processed, or participated in by Dettmer prior to or during the encounter with Findler, including social media accounts such as Facebook and Google." The state moved to quash the subpoena. The trial court, without conducting an evidentiary hearing, granted the motion to quash. After a bench trial, Findler was convicted of speeding.

### *First Assignment of Error*

{¶5}     In his first assignment of error, Findler argues that the trial court erred by not conducting an evidentiary hearing prior to granting the state's motion to quash. Findler cites *Cincinnati v. Neff*, 1st Dist. Hamilton No. C-130411, 2014-Ohio-2026, and *In re Subpoena Duces Tecum Served upon Attorney Potts*, 100 Ohio St.3d 97, 2003-Ohio-5234, 796 N.E.2d 915, in support.

{¶6}     *Neff* involved an interlocutory appeal by a third party of an order denying a motion to quash.  *Neff* at ¶ 7.  This court held, "When deciding a motion to quash a subpoena under Crim.R. 17, the trial court must conduct an evidentiary hearing." *Id.* at ¶ 8, citing *In re Subpoena Duces Tecum Served upon Attorney Potts* at paragraph one of the syllabus.  This court went on to state:

> At the hearing, the proponent of the subpoena bears the burden of demonstrating that the subpoena is not unreasonable or oppressive by showing (1) that the subpoenaed documents are evidentiary and relevant; (2) that they are not otherwise reasonably procurable in advance of trial by due diligence; (3) that the proponent cannot properly prepare for trial without production and inspection of the documents and that the failure to obtain the documents may tend to unreasonably delay the trial, and (4) that the subpoena is made in good faith and not intended as a general "fishing expedition."

*Neff* at ¶ 8; *see United States v. Nixon*, 418 U.S. 683, 699-700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

{¶7}     In *Neff,* although the trial court "conducted oral argument with respect to the subpoena, it did not receive sworn testimony or other material of evidentiary

value," and so did not meet the requirements of an evidentiary hearing. *Neff* at ¶ 9. This court remanded for the trial court to conduct an evidentiary hearing on the motion to quash. *Id.* at ¶ 10.

{¶8} Neither *Neff* nor *Potts* involved a direct appeal resulting from a final judgment in a criminal case. Rather, they involved an interlocutory appeal and an ancillary criminal contempt conviction, respectively. *See Neff* at ¶ 7; *Potts* at ¶ 6. Several Ohio courts have distinguished those types of appeals from appeals from a final judgment and carved out an exception to the *Potts* rule where the trial court's failure to hold an evidentiary hearing was harmless.

{¶9} In *Miamisburg v. Rinderle,* 2d Dist. Montgomery No. 26094, 2015-Ohio-351, ¶ 18, the defendant, on direct appeal following a conviction, alleged that the trial court had erred in failing to hold an evidentiary hearing before granting the state's motion to quash. The defendant had subpoenaed the prosecutor to testify in order to ensure that the prosecutor had provided full discovery. *Id.* at ¶ 20. The Second District held that although the trial court did not hold an evidentiary hearing, the error was harmless because the defendant's subpoena was clearly improper. *Id.* It described the subpoena as a "fishing expedition" and "a shotgun accusation that maybe you haven't received all of the discovery." *Id.*

{¶10} In *State v. Bennett*, 2019-Ohio-4937, 149 N.E.3d 1045, ¶ 85 (3d Dist.), the Third District upheld the trial court's order quashing the defendant's subpoena despite the fact that the trial court did not conduct an evidentiary hearing. The court noted that multiple appellate courts have "addressed interlocutory appeals on this issue" and remanded for the trial court to conduct a hearing. *Id.* at ¶ 80. However,

fewer appeals exist where a trial court has quashed a subpoena, or denied a motion to quash a subpoena, without a hearing and the matter proceeded all the way to a final judgment, which was then appealed. Even *Potts* dealt with an ancillary matter, it was not a direct appeal in the criminal case resulting from a final judgment. Thus despite its bright-line rule that appears applicable on its face, *Potts* is not an entirely analogous set of circumstances.

*Id.* at ¶ 81.

{¶11} Relying on the Second District's decision in *Rinderle*, the Third District held:

While a hearing should be held under *Potts*, where the record demonstrates that subpoena plainly has no merit, and would have no impact on the trial whatsoever that already occurred, we will not go so far as to overturn the entire trial or remand the matter to the trial court to have a superfluous hearing. This is particularly true where this case does not involve an interlocutory or third-party appeal.

*Id.* at ¶ 85; *see State v. Myers*, 12th Dist. Madison No. CA2019-01-003, 2020-Ohio-59, ¶ 21-22 (following *Bennett* and holding that the trial court's failure to hold an evidentiary hearing on the motion to quash was harmless).

{¶12} The present case involves a direct appeal following a final judgment of conviction in a bench trial. In response to the state's argument that his subpoena was irrelevant and should be quashed, Findler stated, "I believe it's relevant – obviously I have the ability to impeach each witness by prejudice. I intend to introduce that and basically the purposes for the stop and the manner of execution

during the stop, and that's why I intend to introduce that into evidence during cross-examination of the witness."

{¶13} During cross-examination of Dettmer, Findler questioned Dettmer about whether he had viewed information on social media, prior to the traffic stop, regarding Findler being stopped for speeding in Tennessee, and whether he specifically targeted Findler's vehicle as a result. Dettmer testified that he had never met Findler prior to the traffic stop and that he had not viewed any information about Findler on social media.

{¶14} There is nothing in the record to indicate that Dettmer possessed any evidence relevant to Findler's defense. Findler's subpoena was a "fishing expedition" for potential impeachment evidence. *See Bennett,* 2019-Ohio-4937, 149 N.E.3d 1045, at ¶ 86. We find that Findler's subpoena was plainly without merit, and the outcome of the trial would not have been different if the court had conducted an evidentiary hearing on the motion to quash. *See Bennett* at ¶ 85. The first assignment of error is overruled.

### *Second Assignment of Error*

{¶15} In his second assignment of error, Findler contends that the trial court erred by granting the motion to quash the subpoena. We apply an abuse-of-discretion standard to a trial court's decision concerning a motion to quash a subpoena. *State v. Beck*, 2016-Ohio-8122, 75 N.E.3d 899, ¶ 23 (1st Dist.).

{¶16} Having determined that the subpoena was plainly improper under the first assignment of error, we hold that the trial court did not abuse its discretion in quashing the subpoena. The second assignment of error is overruled.

### Third Assignment of Error

{¶17}  In his third assignment of error, Findler contends that the trial court committed plain error by making and admitting hearsay statements that violated his confrontation rights under the Sixth Amendment to the United States Constitution.

{¶18} Findler argues that some of the trial judge's own statements constituted hearsay.  " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Evid.R. 801(C).  The trial judge is not a witness or party.  The statements made by the judge were not "offered in evidence."  Therefore, they did not constitute hearsay. The third assignment of error is overruled.

### Fourth Assignment of Error

{¶19}  In his fourth assignment of error, Findler contends that the trial court improperly restricted the scope of cross-examination and demonstrated bias against him and in favor of the state. He argues that those errors, combined with the other errors alleged, amounted to cumulative error and deprived him of a fair trial.

{¶20} The state contends that this court lacks jurisdiction to consider Findler's judicial-bias claim.  We have held that a court of appeals has no "authority" or "jurisdiction" to decide the matter of disqualification of a judge for bias or prejudice.  *See State v. Carter*, 1st Dist. Hamilton No. C-170655, 2019-Ohio-1749, ¶ 17.  However, this court has recognized a distinction between a claim of judicial bias relating to "the formal process used to remove a judge from hearing a case because the judge has an interest in the matter or is prejudiced in favor of one party," and a claim relating to "when a judge's conduct in overseeing a case prevents a party from receiving a fair trial." *See State v. Loudermilk*, 2017-Ohio-7378, 96 N.E.3d 1037, ¶ 17

(1st Dist.). An appellate court has "the authority to review a claim of judicial bias as it impacts the outcome of the case." *Id.* at ¶ 19.

{¶21} Findler's claim is of the second variety. He argues that the trial court's conduct during the trial deprived him of a fair trial. "Judicial bias is demonstrated by 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' " *Loudermilk* at ¶ 21, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶22} A review of the record shows that, although the trial court should have conducted an evidentiary hearing on the motion to quash, its failure to do so was not the result of "ill will" toward Findler or "favoritism" toward the state, nor is there any indication that its decision was preordained. As discussed above, Findler's subpoena was plainly without merit.

{¶23} We find there was no indication of bias in the court's restriction of Findler's cross-examination of Dettmer. Findler repeatedly attempted to ask a question that had already been answered. The court gave Findler opportunities to rephrase before telling him that he would not be allowed to ask that question again. Findler then declined to ask any more questions.

{¶24} Findler has failed to demonstrate cumulative error. The fourth assignment of error is overruled.

### *Conclusion*

**{¶25}**  We overrule all assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.